UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THERESA MARIE
KUZAVA,

        Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

        Defendant.

_____/

Case No. 2:18-cv-13891
District Judge Mark A. Goldsmith
Magistrate Judge Anthony P. Patti

### REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND (ECF No. 11), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 14) and AFFIRM THE COMMISSIONER'S DECISION

**I.  RECOMMENDATION**: For the reasons that follow, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment or remand (ECF No. 11), **GRANT** Defendant's motion for summary judgment (ECF No. 14), and **AFFIRM** the Commissioner's decision.

**II.  REPORT**

Plaintiff, Theresa Marie Kuzava, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance (DI) benefits. This matter is before the United States Magistrate Judge for a Report and

Recommendation on Plaintiff's motion for summary judgment or remand (ECF No. 11), the Commissioner's cross-motion for summary judgment (ECF No. 14), and the administrative record (ECF No. 8).

### A. Background and Administrative History

Plaintiff alleges her disability began on July 10, 2015, at the age of 61. (R. at 157, 182.) In her disability report, she lists several conditions (tremors, blurred vision, memory loss, anxiety, dizziness, speech problems, difficulty writing, and bipolar) as limiting her ability to work. (R. at 174.) As medication side effects are at the heart of this appeal, it is worth mentioning here that:

- In her May 29, 2016 and June 1, 2016 function reports, Plaintiff claims that her medicines (specifically Duloxetine, Lithium Carbonate, Zolpidem, Levothyroxine, and Propranolol) cause side effects. (R. at 201, 210.)[1]

- State agency medical consultant Dale Blum's August 24, 2016 physical RFC assessment commented that "[m]orbid obesity in combination with fatigue secondary to side effects of medications used to treat psychiatric illnesses and apparent fine intentional tremor limits lifting as noted above." (R. at 69; *see also* R. at 68, 71.)

Notwithstanding the above, Plaintiff's application was denied in October 2016. (R. at 62-76, 80-96.)

---

[1] Plaintiff's list of medications also includes Lorazepam and Risperidone, but the form is undated and does not seek side effect information. (R. at 236.)

2

She requested a hearing by an Administrative Law Judge ("ALJ"). (R. at 97-98.) On August 25, 2017, ALJ Latanya White Richards held a hearing, at which Plaintiff and a vocational expert (VE), Diane Regan, testified. (R. at 36-61.) Of particular import to the issue before this Court is Plaintiff's testimony that the side effects of her bipolar medication include tremors, problems writing, blurred vision, slurred speech, dizziness, and dry mouth. (R. at 47-48, 50, 57.) Nonetheless, on February 28, 2018, ALJ Richards issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 8-35.)

Plaintiff submitted a request for review of the hearing decision. (R. at 152-156.) However, on October 16, 2018, the Appeals Council denied Plaintiff's request for review. (R. at 1-5.) Thus, ALJ Richards's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on December 14, 2018.

### B. Plaintiff's Medical History

The administrative record contains approximately 302 pages of medical records, which were available to the ALJ at the time of her February 28, 2018 decision. (R. at 34-35, 247-548 [Exhibits B1F-B16F].) These materials will be discussed in detail, as necessary, below.

### C. The Administrative Decision

Preliminarily, ALJ Richards mentioned Plaintiff's prior Title II application, which was dated March 13, 2014, denied at the initial level on July 8, 2014, and denied at the reconsideration level on September 17, 2014. (R. at 11.) Then, after noting that the reconsideration determination dated September 17, 2014 remained in effect, ALJ Richards explained that "consideration of the claimant's *current* claims is limited to the period beginning September 18, 2014, and continuing through the date of this decision." (R. at 11-12 (emphasis added).)

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 10, 2015, the alleged onset date (AOD). (R. at 14.) At **Step 2**, the ALJ found that Plaintiff had the severe impairment of bipolar disorder. (*Id*. at 14-15.) At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id*. at 15-18.) **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[2] and determined that Plaintiff had the RFC:

> . . . to perform a full range of work at *all exertional levels* but with the following nonexertional limitations: she can frequently climb ramps

---

[2] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 239 (6th Cir. 2002).

>and stairs, never climb ladders, ropes, or scaffolds, frequently balance, stoop, kneel, crouch, and crawl [*i.e., postural limitations*]. The claimant can understand, remember, and carry out simple routine tasks. She can make simple work-related decisions and adapt to occasional routine workplace changes [*i.e., limitations with understanding and memory / sustained concentration and persistence, / adaptation*]. She can have occasional contact with coworkers and supervisors. She can work in proximity with the general public, but is limited to brief and incidental contact [*i.e., social interaction limitations*].

(*Id*. at 18-29 (emphasis added).) At Step **4**, the ALJ determined that Plaintiff was unable to perform any past relevant work. (*Id*. at 29.) At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as sorter, cleaner, and packer. (*Id*. at 30.) The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from July 10, 2015, through the date of the decision. (*Id*.)

### D. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its

own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

**E.     Analysis**

Plaintiff's sole statement of error is that "the ALJ's evaluation of the Plaintiff's subjective symptoms is not supported by substantial evidence[,]" or, more specifically, "the ALJ did not properly evaluate the type, dosage, effectiveness, and side effects of medications." (ECF No. 11, PageID.592-593, 595-596.)  The Commissioner contends that the ALJ "properly considered Plaintiff's subjective symptoms." (ECF No. 14, PageID.611.)

When the SSA evaluations symptoms, including pain, it considers several factors, including:

(i)     Your daily activities;

(ii)    The location, duration, frequency, and intensity of your pain or other symptoms;

(iii)   Precipitating and aggravating factors;

(iv)    *The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms*;

(v)     Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

7

    (vi)    Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

    (vii)    Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (effective Mar. 27, 2017) (emphasis added). *See also* SSR 16-3P ("Evaluation Of Symptoms In Disability Claims"), 2017 WL 5180304 (S.S.A. Oct. 25, 2017).

### 1. Postural limitations

Contrary to Plaintiff's assertion that the ALJ "only briefly mentions that the Plaintiff has side effects from her medication . . . [,]" (ECF No. 11, PageID.595), ALJ Richards's February 28, 2018 decision is riddled with references to medication side effects. Initially, at Step 2, the ALJ acknowledged Plaintiff's testimony that she could comfortably stand for 2-3 minutes, which she attributed, in part, to stability and balance issues from her medication. (R. at 15, 52-53.) The ALJ concluded her Step 2 discussion by noting, "[a]s discussed further below, the undersigned has accommodated her side effects from her medications with some postural limitations." (R. at 15.)

Moreover, early in her RFC discussion, the ALJ acknowledged Plaintiff's testimony that she had an "increasingly hard time with showing up for work and getting the job done and staying for the amount of time required[,]" mostly due to her bipolar disorder medication. (R. at 18, 47.) The ALJ also noted Plaintiff's

8

testimony that her medication side effects included tremors, blurred vision, slurred speech and dizziness. (*Id.*) Furthermore, the ALJ summarized Plaintiff's testimony that "[t]he tremors have resided[,]" since "maybe a year ago, [when] there was a change in medication[,]" and Plaintiff was "in the middle . . . of a change in medication[,]" which she hoped would "eliminate some of the dizziness and some of the slurred speech[.]" (R. at 18, 48.)

Also, the ALJ's review of the medical evidence of record (MER) contains several express citations for what they say or do not say about medication side effects in October 2015, January 2016 and March 2016 (*see* R. at 21-22, 312, 351, 429, 328, 406, 326, 404) and September 2016, January 2017, and June, July and August 2017 (*see* R. at 24-25, 391, 384, 377, 535, 532, 530, 528).) While the ALJ acknowledged that Plaintiff's "alleged side effects were not consistently reported to her psychiatrists," the ALJ further acknowledged that "many of them have resolved, including her tremors and slurred speech[,]" in support of which she referenced July and August 2017 progress notes. (R. at 26, 528, 532.) Then, the ALJ stated:

> Due to her complaints of ongoing side effects from her medications of dizziness and lightheadedness and her complaints of unsteadiness, the undersigned has limited her to frequently climb ramps and stairs, never climb ladders, ropes, or scaffolds, frequently balance, stoop, kneel, crouch and crawl.

(R. at 26.)

9

Finally, when considering the opinion evidence, the ALJ assigned little weight to the medical source statements (MSSs) of her treating psychiatrists, namely Karla A. Viera, M.D.'s October 30, 2015 mental work-related activities form (R. at 543-545) and Karen Joseph, M.D.'s November 1, 2016 mental work-related activities form (R. at 546-548). (R. at 26-27.) After summarizing these pieces of evidence, the ALJ concluded that, despite the long-term treatment relationship and specialization in treating Plaintiff's bipolar disorder, Drs. Vieta and Joseph's opinions were "inconsistent with their own treatment notes." (R. at 26-27, 543-544, 546-547.) More specifically, the ALJ supported the statement that "Dr. Viera's treatment notes form September 2015 to June 2016 showed the claimant's bipolar disorder was stable[,]" with, *inter alia*, citations to Dr. Viera's January 29, 2016 and March 11, 2016 progress notes (R. at 326, 328, 404, 406), which the ALJ characterized respectively as "no mention of side effects of her medications," and "did not report any side effects of her medications . . . ." (R. at 27.) Also, the ALJ supported the statement that "Dr. Joseph's treatment notes since July 2016 also do not support the marked limitations she opined of[,]" with, *inter alia*, a citation to Dr. Joseph's September 13, 2016 progress notes (R. at 391), which the ALJ characterized as "denied any side effects of her medications." (R. at 27-28.) Moreover, even though Plaintiff's review of the relevant medical evidence contains a citation to Dr. Joseph's MSS, Plaintiff does not argue that the

10

ALJ errantly treated either Dr. Viera's or Dr. Joseph's MSS. (ECF No. 11, PageID.590, 593-596.)

At the conclusion of her RFC discussion, the ALJ summarized: "the claimant's alleged side effects of tremors and slurred speech resolved with adjustments to her medications, and she did not consistently report side effects of dizziness, fatigue, imbalance, or blurred vision." (R. at 29.) To the extent Plaintiff takes issue with the ALJ's consideration of the side effects of Plaintiff's medication (ECF No. 11, PageID.595-596), she has not shown error in the ALJ's consideration of Plaintiff's related testimony, the related MER, or the related opinion evidence. More to the point, although Plaintiff alleges that "the ALJ did not properly evaluate the type, dosage, effectiveness, and side effects of medications[,]" Plaintiff has not shown error in the ALJ's evaluation of her "complaints of *side effects* of [her] medication[,]" (ECF No. 11, PageID.595-596 (emphasis added)), let alone error in the ALJ's consideration of medication *type*, *dosage* or e*ffectiveness*. 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv).

### 2. Concentrating, persisting, or maintaining pace (CPP)

Plaintiff argues that the ALJ failed to consider whether, due to her medications, she would be "off task" in a typical workday. (ECF No. 11, PageID.596.) This argument is unavailing.

11

First, this single line in Plaintiff's brief is hardly a developed argument and, thus, may be treated as waived. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (citation and internal quotation marks omitted); *see also United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

Second, even assuming Plaintiff intended to do so (as her argument is largely undeveloped), she does not convincingly challenge the RFC's seemingly related mental health limitations, *i.e.*, to "understand, remember, and carry out simple routine tasks[,]" and "make simple work-related decisions and adapt to occasional routine workplace changes." (R. at 18.) Such limitations, as framed by the Disability Determination Explanation (DDE) form, apparently relate to an individual's limitations in "understanding and memory," "sustained concentration and persistence," and/or "adaptation." (*See*, *e.g.*, R. at 71-72.)

At Step 3, the ALJ found that Plaintiff had mild limitation in her ability to understand, remember, or apply information and mild limitation in her ability to adapt or manage oneself, but the ALJ found that Plaintiff had *moderate limitation*

in her ability to concentrate, persist or maintain pace (CPP). (R. at 16-17.) The ALJ supported her CPP conclusion with citations to Plaintiff's function report (R. at 199) and the September 23, 2016 mental status examination report by Julia A. Czarnecki, MA, LLP / Herman J. Daldin, Ph.D. (R. at 373-374), and added that Plaintiff's "mental status examinations by her treating psychiatrists [presumably Drs. Viera and Joseph] have routinely shown her attention and concentration to be intact." (R. at 17.)

Moreover, within the RFC discussion, the ALJ noted Plaintiff's alleged "difficulty with attention and concentration." (R. at 19, 55.) When the ALJ reviewed Plaintiff's "long history of being treated for bipolar disorder," she cited several records for their reflections on concentration. (R. at 19-22, 24, 26; *see also* R. at 296 [Dan Skoglund, M.D.], R. at 283-284, 286 [Ronnette P. Ballard, Psy.D.], R. at 346, 335, 328, 395, 393, 387, 391 [Apex Downriver Behavioral Health].) The ALJ noted that, "[d]ue to her complaints of difficulty concentrating and comprehending what she reads, the undersigned has limited her to understanding, remembering, and carrying out simple, routine tasks and making simple work-related decisions." (R. at 26.) The ALJ also noted records about concentration when he discussed the opinion evidence, citing Dr. Viera's MSS, Dr. Joseph's MSS, and some of their treatment notes. (R. at 26-28, 543-545, 546-548, 328, 393, 381, 386, 528-542.)

13

At the conclusion of her RFC discussion, the ALJ summarized: "Despite her worsening symptoms, her mental status examinations showed she continued to have intact memory, attention, and concentration." (R. at 29.) To the extent Plaintiff's "off task" argument takes issue with the ALJ's consideration of Plaintiff's ability to maintain CPP, she has not shown how the Step 3 "moderate limitation" in CPP finding was errant, nor has she shown that the RFC's mental health limitations, specifically that Plaintiff "can understand, remember, and carry out simple routine tasks[,]" and "can make simple work-related decisions and adapt to occasional routine workplace changes [,]" fail to account for any affect her medication has upon her ability to stay on task.

### F. Conclusion

At the outset of the RFC determination, the ALJ represented that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." (R. at 18.) Then, the ALJ expressly stated that Plaintiff's "alleged symptoms and limitations are generally not consistent with[,] nor [are they] supported by[,] the objective medical evidence." (R. at 19; *see also* R. at 26.)

Although Plaintiff's motion purports to challenge the ALJ's handling of Plaintiff's subjective symptoms, *i.e.,* the credibility finding, the heart of the appeal

concerns the ALJ's treatment of medication side effects.  (*See* ECF No. 11, PageID.593-596.)  However, Plaintiff fails to successfully challenge either the ALJ's treatment of Plaintiff's alleged medication side effects or the ALJ's conclusions as to Plaintiff's ability to concentrate, persist or maintain pace.  In sum, Plaintiff has the burden of proof on her statement of error.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("during the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.").  Plaintiff has not shown legal error that would upend the ALJ's decision.  For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment or remand (ECF No. 11), **GRANT** Defendant's motion for summary judgment (ECF No. 14), and **AFFIRM** the Commissioner of Social Security's decision.

### III.     PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  January 23, 2020            _____
                                    Anthony P. Patti
                                    UNITED STATES MAGISTRATE JUDGE